IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Santiago Rios, #328137 | ) | C/A No. 5:15-01705-TMC-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden, Perry Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Santiago Rios ("Petitioner"), a state prisoner, filed this pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation ("R&R") on Respondent's Return and Motion for Summary Judgment filed July 15, 2015. ECF Nos. 13, 14. On July 16, 2015, pursuant to *Roseboro v. Garrison*,[1] the court advised Petitioner to file a Response to Respondent's Summary Judgment Motion if he wished to pursue his case. ECF No. 15. On August 20, 2015, after receiving an extension, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment. ECF No. 19. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 14, be granted.

I.    Background

Petitioner is currently incarcerated in the Perry Correctional Institution of the South Carolina Department of Corrections ("SCDC"). ECF No. 1 at 1. In 2008, Petitioner was

_____

[1] 528 F.2d 309 (4th 1975).

indicted during the January term of the Spartanburg County Grand Jury for murder (2008-GS-42-0170). ECF No. 13-17 at 83-85. Petitioner proceeded to a jury trial from April 28, 2008 to May 1, 2008, before the Honorable Roger L. Couch, Circuit Court Judge. ECF No. 13-10 at 5. Petitioner was represented by David Collins, Esquire and Doug Brannon, Esquire. *Id*. The State was represented by Solicitor Trey Gowdy and Assistant Solicitor Cindy Crick. *Id*. The jury found Petitioner guilty of murder, and Judge Couch sentenced Petitioner to thirty years' imprisonment. ECF No. 13-15 at 53, 61.

Petitioner appealed his conviction and sentence to the South Carolina Court of Appeals. Ricky K. Harris, Esquire represented Petitioner on appeal and briefed the following three issues:

1) Because the State failed to prove that Rios knowingly and intelligently waived his *Miranda* rights the trial court erred in denying Rios' motion to suppress the two statements given to the police.

2) The trial court erred in refusing and/or failing to instruct the jury on involuntary manslaughter because there was evidence of a struggle over the gun.

3) The trial court erred in refusing and/or failing to instruct the jury on self-defense because there was evidence which a jury could have found that Rios was acting in self-defense.

ECF No. 13-1 at 2. On July 14, 2010, the South Carolina Court of Appeals affirmed Petitioner's convictions and sentences in a published opinion. ECF No. 13-4 at 1-7. On July 30, 2010, the South Carolina Court of Appeals issued a remittitur. ECF No. 13-5.

II.     Procedural History

Petitioner filed an application for Post-Conviction Relief ("PCR") on October 13, 2010. ECF No. 13-16 at 18. Petitioner asserted the following grounds for relief, repeated verbatim:

a) Ineffective assistance of counsel.
b) Due Process.
c) 3rd Party Guilt.

2

*Id.* at 19-20.  Petitioner filed a "Memorandum of Law" in support of his PCR application in which he raised four grounds to support his claim that trial counsel were ineffective.  *Id.* at 24. Assistant Attorney General Suzanne H. White filed a Return on behalf of the State.  *Id.* at 33. A PCR hearing held on September 19, 2011 before the Honorable J. Mark Hayes, II, Circuit Court Judge.  *Id.* at 35.  Petitioner was present and represented by Susannah C. Ross, Esquire; Assistant Attorney General Suzanne White appeared for the State.  *Id.*  Judge Hayes denied Petitioner's PCR application by way of an order filed January 18, 2012.  ECF No. 13-17 at 42.

PCR counsel filed a Motion to Alter or Amend the Judgment on February 1, 2012.  ECF No. 13-17 at 52.  A hearing on the motion was held on June 14, 2012, before Judge Hayes.  *Id.* at 60.  Judge Hayes denied the motion on October 2, 2012.  *Id.* at 82.

On appeal, Petitioner filed a petition for a writ of certiorari to the South Carolina Supreme Court.  ECF No. 13-6 at 1.  Petitioner was represented in his PCR appeal by Susan B. Hackett, Appellate Defender, South Carolina Commission on Indigent Defense, Division of Appellate Defense.  *Id.*  Petitioner presented the following issue for review:

> Violating Petitioner's rights pursuant to South Carolina law and the Sixth and Fourteenth Amendments to the United States Constitution, the PCR court erred in denying Petitioner relief from his murder conviction where the PCR court held trial counsel's deficient performance in failing to request a jury instruction on self-defense, which would have been reversed on direct appeal, was not prejudicial to Petitioner.

*Id.* at 2.  Assistant Attorney General White filed a Return on behalf of the State.  ECF No. 13-7 at 1. The Supreme Court denied the petition on February 4, 2015, and a Remittitur was sent on February 20, 2015.  ECF Nos. 13-8, 13-9.  This federal habeas Petition followed and was filed on April 20, 2015. ECF No. 1.[2]

---

[2] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988).

III.    Discussion

A. Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: The State Courts erred in failing to suppress Petitioner's two statements as a result of *Miranda* violation due to the State's failure to prove that Petitioner knowingly and intelligently waived MIRANDA.
>
> Supporting Facts: The State's case rested largely on two statements which Petitioner gave police after he was taken into custody. Petitioner sought to exclude the two statements on the grounds the statements were given without knowingly and intelligently waiving his *MIRANDA* rights. Petitioner relief on the issue of his language and cultural factors prevented him from making a knowing and intelligent waiver. Nonetheless the State Courts allowed the statements in which was contrary to and unreasonable application of clearly established federal law. ECF No. 1 at 5.
>
> GROUND TWO: The Trial Court erred in refusing to instruct the jury on involuntary manslaughter where there was evidence of a struggle over the gun
>
> Supporting Facts: After the trial court admitted Petitioner statements the statement detailed an argument and fight between Petitioner and the decedent. The statement described a struggle for the gun which eventually fired killing the decedent. Trial Counsel requested numerous times that the court instruct the jury on involuntary manslaughter, Under the circumstances and facts of the case there was evidence from which the jury could have found Petitioner guilty of involuntary manslaughter. Therefore the reviewing courts erred in not finding the trial court erred in refusing to instruct the jury on involuntary manslaughter. ECF No. 1 at 7.
>
> GROUND THREE: The trial court erred in refusing to instruct the jury on self-defense as there was sufficient evidence by which the jury could have found that Petitioner was acting in self-defense.
>
> Supporting Facts: Petitioner statements that were entered into the trial provided evidentiary support for the jury to have been instructed on the defense of self-defense, and the failure to instruct the jury on self-defense denied Petitioner his right to a complete defense and his right to a fair trial. Petitioner's statement read "We both were in the room. She had my neck, She grabbed a 2 lb. weight and hit me with it. She pushed me on the bed and went after the gun. I was afraid, I tried to get it from her **but she was pointing it at me.** She turned her face and I grabbed the gun. We struggled, over the gun. She had her finger on the trigger,

and I had the barrel. We struggled over the gun, I was defending myself. During the struggle a shot was fired. ECF No. 1 at 8.

GROUND FOUR: Petitioner was denied the effective assistance of counsel and his right to a fair trial when counsel failed to request a jury instruction on self-defense where the evidence warranted such an instruction.

Supporting Facts: Petitioner was convicted of killing his wife. During trial evidence was presented that the shooting was in fact accidental or in self-defense. Despite the clear evidence in the record of Petitioner's acting in self-defense, the trial court refused to charge self-defense, yet unwittingly to Petitioner counsel had abandoned his previous request for such a charge. During the PCR hearing, the PCR Judge found counsel's abandonment deficient performance and had counsel preserved the issue for appeal, Petitioner's conviction would have been reversed by the appellate court and granted a new trial However, the PCR Court erred by concluding that Petitioner did not show prejudice, despite the his express findings that the appellate court would have reversed the conviction. The State reviewing court's decision was unreasonable application of federal law. ECF No. 1 at 10.

B. Standard for Summary Judgment

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the Court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    C.  Habeas Corpus Standard of Review

        1.       Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 397-98 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

a.   Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not

grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b. Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted);

*Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

2.    Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)    (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.   28 U.S.C. § 2254(b)(1)(A).   "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *overruled on other grounds by U.S. v. Barnette*, 644 F.3d 192 (4th Cir. 2011).   Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR.   State law requires that all grounds be stated in the direct appeal or PCR application.   Rule 203, SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).   If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP.   Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court.   *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).   Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts.   A PCR must be filed within one year of the judgment, or if there is an appeal, within one year of the appellate court decision.   S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals.   *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not

11

be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)).

3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495-96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to

13

consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

IV.    Analysis

A. Procedurally Barred Grounds

In Grounds Two and Three, Petitioner argues the trial judge erred by not instructing the jury on involuntary manslaughter and self-defense. Respondent moves for summary judgment on Grounds Two and Three, arguing the claims are procedurally barred from federal habeas review. The undersigned agrees, and finds Grounds Two and Three are procedurally barred because the South Carolina Court of Appeals found the same claims were barred under independent and adequate state procedural rules. *See Smith v. Murray*, 477 U.S. at 533; *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008) ("Federal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice.") (citing *McCarver v. Lee*, 221 F.3d 583 (4th Cir. 2000)).

At trial, Petitioner originally asked the trial judge to instruct the jury on involuntary manslaughter and self-defense. ECF No. 13-14 at 109. After a lengthy discussion between the trial judge and the parties concerning the merits of each charge, the trial judge stated he was "not inclined" to give the involuntary manslaughter charge and that he did not intend to charge self-defense. *Id.* at 115, 119-20. However, the trial judge said he felt voluntary manslaughter and

accident would be appropriate charges.  *Id.* at 119.  Trial counsel conferred with each other and then asked the trial judge to charge murder, voluntary manslaughter, and accident.  *Id.*  Based on these facts, the Court of Appeals found Petitioner waived his right to appeal the jury charge issues because they were conceded at trial.  ECF No. 13-4 at 7.  *See Ex parte McMillan*, 461 S.E.2d 43, 45 (S.C. 1995) (finding an issue that was expressly conceded at trial was procedurally barred from appellate review).  The Court of Appeals also found the issues were not preserved for appellate review because Petitioner failed to contemporaneously object to the jury charge as given.  ECF No. 13-4 at 7 (citing *State v. Johnson*, 608 S.E.2d 520 (S.C. 2005) ("To preserve an issue for review there must be a contemporaneous objection that is ruled on by the trial court.").[3] The Court of Appeals' findings are independent and adequate state procedural rules that bar Petitioner from raising these claims in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. at 533; *Lawrence*, 517 F.3d at 714.  Accordingly, Grounds Two and Three are procedurally barred.

     B.  Miscarriage of Justice Exception

     Petitioner may overcome procedural defaults and have his claims addressed on the merits by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review.  *See Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602-03 (4th Cir. 1996).  In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent.  Actual innocence is defined as factual innocence, not legal innocence.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In order to pass through the actual-innocence gateway, a

---

[3] At the PCR hearing, trial counsel Brannon admitted he waived his ability to appeal the jury charge issues.  ECF No. 13-16 at 105-06.

petitioner's case must be "truly extraordinary." *Id.* (internal citation omitted). The undersigned's review of the record does not support a showing of any cause and prejudice or actual innocence to excuse the default. Thus, his claims are procedurally barred from consideration by this court and should be dismissed. The undersigned therefore recommends that the Respondent's Motion for Summary Judgment be granted as to Grounds Two and Three.[4]

C.  Merits

a.  Ground One

In Ground One, Petitioner argues the trial judge erred in refusing to suppress Petitioner's two statements to police because he did not knowingly and intelligently waive his *Miranda* rights. Specifically, Petitioner contends language and cultural differences prevented him from making a knowing and intelligent waiver of his *Miranda* rights. Respondent moves for summary judgment on this claim, arguing the determinations by the trial judge and Court of Appeals on his claim were reasonable applications of United States Supreme Court precedent.

The Self-Incrimination Clause of the Fifth Amendment provides, "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Where a defendant was subjected to custodial interrogation by law enforcement officers, the prosecution may not use statements obtained during the interrogation without demonstrating the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Those procedural safeguards include warning the defendant of his right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. *Id.*

---

[4] The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the Court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Accordingly, the undersigned will not discuss the merits of Grounds Two and Three.

"The Court's fundamental aim in designing the *Miranda* warnings was 'to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process.'" *Colorado v. Spring*, 479 U.S. 564, 572 (1987) (quoting *Miranda*, 384 U.S. at 469). "Consistent with this purpose, a suspect may waive his Fifth Amendment privilege, 'provided the waiver is made voluntarily, knowingly and intelligently.'" *Id.* (quoting *Miranda*, 384 U.S. at 444). In determining whether the defendant's waiver was knowing and intelligent, courts must ask whether the waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Morane v. Burbine*, 475 U.S. 412, 421 (1986). "Only if the 'totality of the circumstances surrounding the interrogation' reveal . . . the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

At trial, Petitioner moved to suppress both statements he provided police. ECF No. 13-10 at 62. The trial judge held a pretrial suppression hearing to determine the admissibility of the statements. *Id.* Officer George Baldarama testified he took Petitioner's first statement to police, serving as a translator between Petitioner and the investigating officer. *Id.* at 65-66. He was told Petitioner only spoke Spanish so he Mirandized Petitioner in Spanish. *Id.* at 66. He further testified Petitioner only communicated in Spanish with him and Petitioner never had any trouble understanding him. *Id.* He also stated Petitioner spoke in another dialect with him. *Id.* After Officer Baldarama read the *Miranda* rights from a card written in Spanish, Petitioner wrote his initials next to each right to indicate he understood each right. *Id.* at 68. Petitioner then provided police with a statement in Spanish, and Officer Baldarama wrote it down in English. *Id.* at 69. Officer Baldarama testified that if Petitioner did not understand an English term or if a term did

not translate, he would explain it to Petitioner again or ask Petitioner to explain it to him to ensure Petitioner understood the translation.  *Id.* at 70.

Officer Angel Diaz took Petitioner's second statement to police.  *Id.* at 100.  Officer Diaz testified Petitioner was already Mirandized when he was called to assist the investigating officer in interviewing Petitioner.  *Id.* at 100-01.  He testified he had no trouble communicating with Petitioner in Spanish.  *Id.*  He took Petitioner's statement in Spanish and wrote it down in English.  *Id.* at 105-06.  He then read the statement back to Petitioner in Spanish and gave Petitioner the opportunity to make changes, additions, or deletions.  *Id.* at 106.

Robert Reeder also testified at the pretrial suppression hearing.  Reeder was the education and safety director at Petitioner's former employer, Milliken & Company.  *Id.* at 113.  Reeder testified he conducted Petitioner's training.  *Id.* at 114.  He testified that in training and casual conversations with Petitioner, they only spoke English, and he never had trouble understanding Petitioner's English.  *Id.* at 116.

Finally, Joaquin Marquez testified at the pretrial suppression hearing.  Marquez is a native of Mexico and spoke the same dialect as Petitioner—Tarascan.  *Id.* at 121.  Marquez testified Tarascan does not have a word for "court" or "judge."  *Id.* at 121-22.  He further testified that in the Tarascan community there are no rights comparable to *Miranda* rights.  *Id.*

In support of his motion to suppress, Petitioner argued he did not have the capacity to understand *Miranda* rights because of the language barrier.  *Id.* at 126.  Petitioner also argued the *Miranda* card Officer Baldarama read from was incomplete because the Spanish translation only said that anything the suspect says "can be used against you," but did not say "will be used against you."  *Id.* at 127-28.  In response, the State argued Petitioner spoke Spanish and English to the 9-1-1 operator, communicated with his translator in Spanish, and he had lived in the

United States for ten years where he spoke English at his job. *Id.* at 131-32. The State further argued Petitioner had lived in the United States long enough to be integrated into the United States' culture and understand the meaning of the right to remain silent. *Id.*

The trial judge found, based on the facts and circumstances presented, that Petitioner knowingly, freely, and voluntarily provided the statements to police. *Id.* at 138. The trial judge emphasized no testimony was presented showing Petitioner had decreased mental capacities or abilities. *Id.* at 137.

On appeal, Petitioner raised the following issue: "Because the State failed to prove that Rios knowingly and intelligently waived his Miranda rights the trial court erred in denying Rios' motion to suppress the two statements given to the police." ECF No. 13-1 at 2. The Court of Appeals found the trial judge did not abuse its discretion in admitting Petitioner's statements because there was evidence in the record indicating Petitioner knowingly and intelligently waived his right to remain silent. ECF No. 13-1 at 5. In support of its finding, the Court of Appeals cited the officers' testimony that they had no trouble communicating with Petitioner in Spanish and Petitioner's statement to Officer Baldarama that he understood his rights. *Id.* The court also cited Petitioner's ten-year residency in the United States and ability to speak English at work. *Id.*

The undersigned finds the trial judge and Court of Appeals' decisions are not contrary to, and do not involve an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented. *See* § 2254(d). The evidence presented during the suppression hearing showed Petitioner spoke English and Spanish and communicated in Spanish fluently with Officers Baldarama and Diaz. Officer Baldarama asked Petitioner if he understood the *Miranda* rights as he read them, and Petitioner responded

affirmatively.  Also, while Petitioner presented evidence that his native dialect of Tarascan does not have words for "court" or "judge," Petitioner gave no indication to Officer Baldarama that he did not understand any of the words in the *Miranda* warning.  Further, Petitioner told Officer Baldarama he understood his rights and initialed a set of printed *Miranda* rights to indicate he understood them.  Therefore, the totality of the evidence showed Petitioner comprehended the *Miranda* warning. *See Morane*, 475 U.S. at 421.  Accordingly, the undersigned finds the Court of Appeals' decision affirming the denial of Petitioner's motion to suppress the statement was not an unreasonable application of federal law, and Respondent is entitled to summary judgment as to Ground One.

b.  Ground Four

In Ground Four, Petitioner argues trial counsel was ineffective for failing to request a self-defense charge and preserve the issue for his direct appeal.  ECF No. 1 at 10.  Respondent moves for summary judgment, arguing the PCR judge reasonably applied federal law in denying this claim.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution.  *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  In *Strickland v. Washington* the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice.  466 U.S. at 687.  Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable.  *Id.* at 688-89.  Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id.* at 694.

At trial, the State presented evidence that Petitioner and his wife, the victim, engaged in a verbal altercation when the victim refused to prepare dinner for Petitioner when he returned home from work. ECF No. 13-11 at 120, 131-32; 13-12 at 99-100. The eyewitness testimony showed Petitioner and victim began the argument in the kitchen but then moved to the back bedroom. *Id.* The only evidence of what occurred in the back bedroom came from Petitioner's second statement to police, translated by Officer Diaz. ECF No. 13-12 at 100. Petitioner's statement, as published to the jury, read as follows:

> I got home. We did not argue about food. My wife went to the kitchen to warm my food. I followed her. I went to get the plate of food that she was warming up. She was angry. When she got angry she would not bring me food. She was angry because of the last Wednesday I got out at 6:00 p.m. from work and I got home at 6:25 at my sister's house. I was drinking wine. I got to my house about 11:00 or 11:30. I did not bother my wife. I slept in my car.
>
> My dad came out an asked me to come inside. I got out of my car and came inside. I went to bed. I fell asleep.
>
> Thursday morning I went to work at 8:00 a.m. I got out at 12:00 p.m. She, my wife, was at home when I got home. I asked her to get my lunch out of my lunch box because I did not eat it. I showered and went with my dad to my sister's house. We stayed about twenty minutes. We went back home and my wife and mom were cooking.
>
> I went out to get some candles. That's what you people saw inside my door. When I got home, I asked my wife for food. But she was upset that I did not eat my lunch yesterday. I told her that the reason I did not eat my lunch was because I got off early from work. So, she heated up my old lunch and gave it to me. I thought she was going to give me turkey. She said no.
>
> My mom went to the kitchen and asked her to give me turkey. She said I'm going to eat my old lunch. I shoved her and she pushed, and she pulled my hair and also pulled my medallion. She went to the room. I followed her. She locked the door. I told her not to lock the door. We both were in the room. She had me by the neck. She grabbed a two to three pound weight and hit me in the

mouth with it. She told me that her mom was on the way to pick her up. I asked why. She said she did not want to be with me no more. She pushed me on the bed. She went after the gun. I was afraid. I wanted to get to, I wanted to get it from her; but she was pointing, pointing it at me.

She turned. I wanted to open the door, but I could not. She turned her face and I grabbed the gun. We struggled. I told her to let go. She had her finger on the trigger, and I had the barrel.

I told her you're going to kill me. She said yes, so you won't belong to no one else. We struggled. I was defending myself. I thought that a bullet might come out and hit me or her or my mom. During the struggle, a shot was fired. She fell. I thought she was playing, but she was not.

When I saw the blood I called the ambulance, 9-1-1. It was in self-defense and the officer showed, an officer showed – I asked for an ambulance. I don't want police. I want an ambulance.

*Id.* 100-02.

During the pre-charge conference, Petitioner requested the trial judge charge the jury on self-defense, arguing Petitioner's statement to police that he fought with victim over the gun in self-defense was evidence to support a self-defense charge. ECF No. 13-14 at 111. The State responded that Petitioner's use of the "self-defense" as a colloquial phrase was not sufficient to show the elements of self-defense under the law. *Id.* The State further argued a self-defense charge was not appropriate because Petitioner never admitted to killing victim. *Id.* at 111-12. The trial judge noted self-defense did not seem appropriate because Petitioner's statement showed he was the provocateur. *Id.* at 113. The trial judge also noted Petitioner first shoved the victim and followed her into the bedroom where she was shot. *Id.* at 116. Ultimately, trial counsel requested the trial judge charge the jury on voluntary manslaughter, accident, and murder. *Id.* at 119.

As detailed above, the Court of Appeals found Petitioner waived his right to appeal the jury charge issues because he conceded the issues during the pre-charge conference and failed to

make a contemporaneous objection to the charge as given.  ECF No. 13-4 at 7.

At the PCR hearing, trial counsel Brannon testified they were "most concerned with getting the charge of accident" because Petitioner's statement showed there was a struggle over the gun.  ECF No. 13-16 at 87.  Brannon noted Petitioner never said that *he shot her* in self-defense, and based on the evidence elicited at trial, they had not built a case for self-defense.  *Id.* Brannon agreed that they waived their ability to appeal the issue.  *Id.* at 105-06.

Trial counsel Collins testified their theme or story at trial was that the shooting was an accident because Petitioner never stated that he shot the victim.  *Id.* at 112-13.  He further testified that the truth of the situation was difficult to "pin down," but by the end of trial, they felt had presented a consistent story of accident.  *Id.*  Collins also testified that during their investigation, they could find no evidence that victim was the aggressor or that she was the one who introduced the firearm in the altercation.  *Id.* at 114-15.

The PCR judge found,

> [A]lthough there appeared to be evidence in the record that would reach the legal requirement to charge self-defense, it does not appear to this Court that sufficient evidence of self-defense was presented for this Court to conclude that a different outcome in the trial was likely or probable.  Furthermore, it is clear that the lack of credibility of the Applicant, as a result of the Applicant's various stories as to the events that evening harmed the outcome of the trial.

ECF No. 13-17 at 47.  Petitioner filed a Rule 59(e), SCRCP, motion to alter or amend the judgment.  *Id.* at 52.  After a hearing on the motion, in his final order the PCR judge found:

> Regarding the allegation that Counsel was ineffective for failing to properly preserve the request for a self-defense charge, this Court, although finding clear deficient performance by Counsel in regards to the abandonment of the request to charge self-defense and the resulting lack of preservation of that particular argument for appellate review, cannot find the requisite prejudice required in a *Strickland v. Washington* analysis.  Even a professionally unreasonable error by counsel "does not warrant setting aside the

judgment of a criminal proceeding if the error had no effect on the judgment." [citing *Strickland*] . . . Therefore, this Court cannot rule to a reasonable degree of probability that the outcome of the Applicant's trial would have been different had Counsel not abandoned the self-defense charge or had the self-defense charge been provided to the jury.

*Id.* at 81-82 (citations omitted).[5]    Therefore, the PCR judge found Petitioner's ineffective

---

[5] On the judgment form (Form 4), the PCR judge stated:

In reviewing the record, this Court can conclude that but for trial counsel abandoning the issue of self-defense, the issue would have been addressed by the appellate court. And based on a review of the present record and the decisional authorities in South Carolina (for example *State v. Jackson* and *State v. Muller*) there is evidence in the record which supports the self-defense charge and, therefore, the very reasonable probability that the appellate court would have reversed the trial court and granted a new trial. Thus, but for the professionally deficient representation by trial counsel, the applicant's conviction would have been reversed and a new trial granted.

The issue at this juncture involves the second prong of the PCR/*Strickland* analysis (reasonable probability of a different outcome) at the trial level. With this Court's belief that trial counsel was deficient in abandoning the issue of self-defense and that if the issue had been preserved for appellate review there exists a reasonable probability of reversal, this Court sought guidance from the attorneys as to the application of the PCR/Strickland [sic] standard in such situations.

The Court appreciates the research efforts of the attorneys. The Court's concern arises from the United Supreme Court's [sic] analysis in *Holmes v. South Carolina*. Holmes [sic] is a case which postdates the cases offered by the attorneys. Even though Holmes [sic] is a case that addresses third party guilt, its discussion and analysis of the logic of weighing evidence that bears upon the right of an accused to have a constitutionally meaningful trial is challenging when the PCR/*Strickland* decisional authorities do not require the same approach.

Nevertheless, applying the PCR/*Strickland* analysis and disregarding *Holmes*, the Court cannot find that applicant has met his burden of proof. This Court cannot rule that to a reasonable probability the outcome would have been different.

assistance of trial counsel claim was without merit because Petitioner failed to demonstrate prejudice.

After reviewing the PCR judge's finding that Petitioner failed to show he was prejudiced, the undersigned finds the PCR judge's decision is not contrary to, and does not involve an unreasonable application of, the *Strickland* ineffective assistance of counsel standard.  *See* § 2254(d).  Whether Petitioner was prejudiced in the context of counsel's failure to preserve an issue for appellate review requires the court to consider the probability that the outcome of Petitioner's *appeal* would have been different had the issue been preserved for review.  *See Davis v. Sec'y for Dep't of Corrs.*, 341 F.3d 1310, 1316 (11th Cir. 2003) ("[W]hen a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved."); *see also Archie v. Cartledge*, Civ. A. No. 2:13-cv-3052-RMG, 2015 WL 1169917 (D.S.C. filed March 13, 2015) (applying the prejudice standard espoused in *Davis*).  Therefore, the question becomes: But for trial counsel's failure to preserve the self-defense charge issue, would the Court of Appeals have reversed Petitioner's conviction based on the trial judge's failure to charge self-defense?[6]

---

> The Attorney General is requested to prepare an order denying the Motion for Reconsideration consistent with this form 4.   The formal order once signed will be the final order of the Court.

ECF No. 13-17 at 79-80.  However, as shown above, the final order denying the motion did not reflect the language in the judgment form.

[6] The judgment form indicated the PCR judge reasoned that there was a reasonable probability that the Court of Appeals would have reversed Petitioner's conviction on direct appeal based on the trial judge's failure to charge self-defense, had trial counsel preserved the issue for review. The judgment form also reasoned, however, that Petitioner was not prejudiced because there was

"In general, the trial court is required to charge only the current and correct law of South Carolina." *Sheppard v. State*, 594 S.E.2d 462, 472 (S.C. 2004).  A self-defense charge is only required if it is supported by the evidence.  *State v. Light*, 664 S.E.2d 465, 469 (S.C. 2008); *State v. Jackson*, 681 S.E.2d 17, 20 (S.C. Ct. App. 2009).  To establish self-defense in South Carolina, four elements must be present:

> (1) the defendant must be without fault in bringing on the difficulty; (2) the defendant must have been in actual imminent danger of losing his life or sustaining serious bodily injury, or he must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) if his defense is based upon his belief of imminent danger, the defendant must show that a reasonably prudent person of ordinary firmness and courage would have entertained the belief that he was actually in imminent danger and that the circumstances were such as would warrant a person of ordinary prudence, firmness, and courage to strike the fatal blow in order to save himself from serious bodily harm or the loss of his life; and (4) the defendant had no other probable means of avoiding the danger.

*Id.* (citing *State v. Slater*, 644 S.E.2d 50 (S.C. 2007)).  "If there is any evidence in the record from which it could reasonably be inferred that the defendant acted in self-defense, the defendant is entitled to instructions on the defense, and the trial judge's refusal to do so is reversible error." *Id.*

South Carolina appellate courts have previously required self-defense charges where the defendant and victim struggled over a gun.  In *Light*, the South Carolina Supreme Court found a self-defense charge was warranted where the evidence showed the defendant engaged in a struggle with the victim for control of a rifle.  664 S.E.2d at 469.  The defendant told police that

---

not a reasonable likelihood that the outcome of his *trial* would have been different.  The undersigned notes that this analysis is in conflict with *Davis*.  However, the PCR judge's final order does not include this analysis.  Rather, the final order merely concludes Petitioner was not prejudiced, and gives no further explanation.  Therefore, the basis for the PCR judge's finding that Petitioner was not prejudiced is unclear.

the victim, his girlfriend, accused him of cheating on her with another woman and pointed a rifle

at him in their home and threatened to shoot him.  *Id.* at 466.  He stated he took the rifle from the

victim during a struggle for the gun, but that while the rifle was in his hand, it went off and killed

the victim.  *Id.*  The Supreme Court found:

> We find petitioner was entitled to a self-defense charge.  In a
> statement to police, petitioner indicated he took the gun from [the
> victim] and that it was "either her or me."  This statement indicates
> he believed he was in imminent danger of losing his life.  Also,
> petitioner testified that in the preceding weeks, [the victim] had
> been acting jealous, following him, and had told him that if she
> ever caught him with another woman it was "going to be messy."
> This evidence suggested that petitioner was reasonable in his belief
> that it was either [the victim's] or his life at stake when the
> struggle for the gun began.  Accordingly, the trial court erred by
> failing to charge self-defense given there was evidence to support
> the charge.

*Id.* at 469.

In *Battle v. State*, 409 S.E.2d 400 (S.C. 1991), the Supreme Court found the defendant

received ineffective assistance of trial counsel where counsel failed to request a self-defense

charge on the following facts, as summarized in the court's opinion:

> On September 19, 1986, petitioner visited his neighbor, Alfonzo
> Lee Taylor (decedent).  Decedent had begun drinking earlier that
> day; he was extremely intoxicated.  His blood alcohol level, as
> determined at the autopsy, was .23%.  Petitioner drank with
> decedent until he was also intoxicated.
>
> The two men went into decedent's kitchen where a dispute took
> place concerning petitioner's son.  Decedent pulled out his gun,
> waived it around and threw it on the kitchen table with its barrel
> pointing at petitioner's son.  Petitioner picked up the gun, returned
> it to decedent, and started to leave.  Petitioner testified that, as he
> was walking away from decedent's house, decedent fired the gun.
> Petitioner told his son to run across the street and turned to take the
> gun from decedent.  Petitioner testified that he was afraid decedent
> would shoot him.  The two men struggled over the gun, which
> went off, fatally injuring decedent.

*Id.* at 401.

Arguably, based on the precedent in *Light* and *Battle*, South Carolina's appellate courts would have reversed Petitioner's conviction based on the trial judge's failure to charge the jury on self-defense because the facts of Petitioner's case also involved a struggle over a gun. However, the facts of Petitioner's case are also distinguishable from *Light* and *Battle*.   In Petitioner's case, the evidence showed the victim fired the gun, rather than Petitioner, whereas the defendant in *Light* shot the victim, and in *Battle*, the shooter was unknown.   At best, the evidence shows Petitioner grabbed the barrel of the gun to defend himself because victim was holding the gun with her finger on the trigger.   This evidence may allow an inference that Petitioner was a proximate cause of the victim's death, but it is not evidence that *Petitioner shot* the victim with the purpose of defending himself.   *See Light*, 664 S.E.2d at 469 (stating that to prove self-defense, Petitioner must show "that a reasonably prudent person of ordinary firmness and courage would have entertained the belief that he was actually in imminent danger and that the circumstances were such as would warrant a person of ordinary prudence, firmness, and courage *to strike the fatal blow in order to save himself* from serious bodily harm or the loss of his life).

Additionally, Petitioner's statement indicated he initiated the physical aspect of his confrontation with the victim when he shoved her, whereas the victims in *Light* and *Battle* initiated the altercations that led to the shootings.   Therefore, as the provocateur in the situation, Petitioner may not have been entitled to a self-defense charge.   *See State v. Bryant*, 520 S.E.2d 319, 322 (S.C. 1999) ("One who provokes or initiates an assault cannot escape criminal liability by invoking self defense.   Any act of the accused in violation of law and reasonably calculated to produce the occasion amounts to bringing on the difficulty and bars his right to assert self-defense as a justification or excuse for a homicide.") (citations omitted).

Based on these distinguishable facts, whether the Court of Appeals would have found Petitioner was entitled to a self-defense charge and reversed his conviction is arguable. Therefore, Petitioner failed to show a reasonable likelihood of a better outcome on appeal.  *See Davis*, 341 F.3d at 1316.  The undersigned finds the PCR judge's finding that Petitioner was not prejudiced was not unreasonable.  *See Harrington*, 562 U.S. at 101 ("For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.").  Respondent is entitled to summary judgment as to Ground Four.[7]

---

[7] The undersigned also notes that, despite the Court of Appeals' finding in Petitioner's direct appeal that trial counsel failed to preserve the self-defense charge issue for appellate review, state court precedent exists that would support a finding that trial counsel were not deficient because they adequately articulated their basis for requesting the self-defense charge.  *See Gilchrist v. State*, 612 S.E.2d 702, 705 (S.C. 2005) (explaining that counsel's submission of a jury charge is insufficient to preserve the issue for review if the *basis* of the requested charge is not apparent from the record or if counsel did not *articulate a reason* for the charge).  As demonstrated above, trial counsel provided extensive arguments in support of their request that the trial judge charge the jury on self-defense.  Accordingly, the PCR judge's finding that trial counsel were not ineffective could have also been supported by a finding that trial counsels' performances were not deficient because they adequately preserved the jury charge issue for appellate review under state law.

V.     Conclusion and Recommendation

Therefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 14, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

December 1, 2015                                        Kaymani D. West
Florence, South Carolina                               United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**